Article V of the Extradition Treaty between the United States and Slovakia compelled the District Court below to apply Slovakia's own statute of limitations laws to determine whether in order to carry out this treaty-required obligation, the District Court was required to understand and apply Slovakia's own laws. Specifically, the Court was compelled to apply Slovakia's statute of limitations for the execution of punishment laws and the relevant tolling provisions in accordance with Slovakian law. However, this did not occur below, and the District Court erred by failing to carry out its obligation under the treaty because it did not know and did not apply Slovakian law. Rather, the District Court lacked any meaningful understanding of how to interpret and apply Slovakia's statute of limitations for the execution of punishment provision, as well as the relevant tolling provisions. And as such, the District Court was unable to carry out its function under the treaty. So do I understand your position to be that the District Court was, in effect, to collaterally review what they did in the in absentia court in Slovakia? No, Your Honor. I think what the District Court was compelled to do under the treaty under Article V was to determine whether from, I think the treaty uses the phrase, from lapse of time. So whether there was a statute of limitations provision that would prevent his extradition. He was not to review the in absentia trial. That had nothing to do with it, really. The analysis is simply whether under the statute of limitations for the execution of punishment provision, whether that was told. And that requires a certain understanding of Slovakian law. Okay. And what we're really talking about, what specific language within the treaty that you say, is it the end quotes intent to avoid the punishment? Is that what we're talking about? I think, well, that's the language from the Slovakian tolling provision. Right. And the relevant language is whether or not Mr. Blasko sojourned abroad with the intent to avoid the punishment. That's the language. Okay. Well, let's take your point here. My understanding is, I don't know whether you were his attorney at the time, but it's hard for me to understand how Blasko says he didn't know about the charges because his immigration lawyer, and again, I don't know whether that was you, learned about the international arrest warrant in 2012 and then applied for asylum a few weeks later. So certainly as of 2012, assuming that Mr. Blasko's then attorney and he were communicating, he knew that he had been charged and there was an arrest warrant for him. Well, Your Honor, again, the timeline here is rather lengthy and somewhat tricky, so I'll do my best to elaborate. Mr. Blasko was picked up on an immigration warrant in February 2012 and released June 2012. There was an international arrest warrant that had been and the reason for the four months of his detention was because, in some respect, because there was this arrest warrant. Now, neither the United States nor Slovakia took action to extradite him, to arrest him, or compel him back to Slovakia. Now, at that time, he only knew the presence of an arrest warrant. He wasn't aware that there was a trial date set. Apparently, there was a trial that took place sometime late in 2012, early 2013. Okay. Well, I know you're saying that, but again, I assume he's a former policeman, probably a pretty intelligent guy, and he didn't want to be tried. He wanted to stay in the United States because he didn't want to go back. And I think that's the very thing we're dealing with, is that are we not under Slovakian law, whether he went somewhere else to avoid prosecution? Well, not exactly, Your Honor. And again, the timeline here becomes very important because in 2012, the statute of limitations for the execution of the punishment, that clock hadn't started. That doesn't start until after he would have been convicted. I understand that point, but what I'm getting at is my impression of Slovakian law is, if you leave, if you get out of the country, so to speak, the statute tolls. We have that, as you know, very commonly in the if you have tolling statutes, if somebody leaves the state and they have a, there's a claim that gets tolled many times. So this, from my perspective, it seems to be the same thing. They're saying if you leave the country, if you get out of our jurisdiction, the statute of limitations gets tolled. What's your best argument that that didn't happen here, given the fact that at the very least your client knew that there was an arrest warrant out for him, whether or not it was prosecuted. He knew they were looking for him. Let me respond as best I can, Your Honor. Again, when he came to the United States, and this is all substantiated in the record, he came in 2010. There was no warrant for his arrest. He came here lawfully to reside with his wife, who was here lawfully. There was no fleeing at that particular time or sojourning abroad, one could say. In 2012, when he learns of the international arrest warrant, his conclusion after these immigration proceedings are that these, they're not being pursued. If they were going to be being pursued, it would have been his understanding that he would have been extradited and compelled to come back to deal with the matter. The fact that nothing happened gave him the impression, understandably, that perhaps that there was nothing more to do here. Assume that's all true. He did know about it as, about the conviction, or at least the extradition warrant, as of October 2017. Is that correct? October 2017 was when he was arrested, yes. Right. And the statute of limitations hadn't run yet. So why isn't the statute told from at least that point? Well, I think the problem we have here, Your Honor, is we don't really know. The treaty calls upon, well, the treaty and the relevant extradition statutes, as well as common law, call upon the district court to interpret, well, to review the treaty, to see what the charge defenses fall within the terms of the treaty, which in some cases, and in this particular case, where the treaty's own laws. So what we have here is an obligation upon the district court to do that analysis. And you're saying the district court didn't do that analysis? No, Your Honor. Exactly. I think what we have here is the district court relied on and deferred to the conclusory supplemental declaration of this Lockean judge, which provides no meaningful analysis or guidance for the court to actually undertake what does it mean to sojourn abroad with the intent to avoid the punishment. Well, I thought somebody interpreted that sojourn and found that he did sojourn. Who was that? Was that the district court? No, Your Honor. That was the Slovakian judge, submitted a single-page declaration, which indicated that it was her belief that because he was arrested in October 2017 and didn't immediately submit to extradition, that he was, at that point, sojourning abroad with the intent to avoid the punishment. Well, how are we supposed to interpret? What do you suggest is the correct interpretation of Slovakian law on this point? I think two comments. I think, one, we don't know exactly. And what I mean by that, and I refer the court to the cases cited at page 25 of my opening brief, and that's the In Re Extradition of Mania case, as well as the Schmier v. Warden of Santa Rosa County Jail case. I think those cases are illustrative here. Both of those cases involve nearly the identical same situation, where the district court was called upon to understand the requesting country's laws, not just with respect to the statute of limitations, but also with respect to its tolling provisions. In both of those cases, what we have are detailed legal explanations that were provided by the requesting country that enabled the district court to actually undertake that analysis. Okay. Well, in this case, I gather your point is there wasn't enough discussion. In this summary conclusion, did Mr. Blasco's counsel, and again, I don't know who that was at that point, come forward with contrary construction of Slovakian law and said, no, no, that's wrong, it's this? That was not discussed. Certainly, there was a tendency from the extradition court, the district court, to defer to the Slovakian judge's conclusion. So much of the discussion- That's international law and comedy, right? But you still had a chance, if I understand correctly, to come forward with your own, if you were the lawyer, come forward with your own expert discussion, maybe from another Slovakian judge or a law professor there or somebody that countered it. But you have a judge who has only one side. There's a deferral. What am I missing? Well, what I would say, Your Honor, is it's the government's burden to establish that this particular individual and the offenses that he's being sought for extradition for fall within the applicable extradition treaty. So it's the government's burden to show to the district court that this individual is extraditable under the treaty. Right. So it wouldn't be- The government thinks that it did do that, and the question seems to be, if I understand your position correctly, you're just saying statute of said, no, no, this was told based on Slovakian law. Why was the district judge not entitled to rely on that Slovakian judge's, if you will, construction of the Slovakian statute of limitations? Well, Your Honor, I think it is incumbent upon the district court to- There's a certain obligation to review the treaty, the extradition statute, to understand whether this particular individual, these offenses fall within it. But ultimately, you still get back to Slovakian law. You seem like a really bright guy. Do you know Slovakian law? No, Your Honor. Are you an expert in Slovakian law? No, Your Honor. And I think this is exactly why those two cases that I referenced, the Menina case and the Schmeer case, are revelatory here. Because what happened there is the government, through the requesting country, presented substantial information that provided the district court a roadmap for how to interpret those countries' laws. What's the role of the State Department in this kind of a case? Well, Your Honor, in an extradition case, at this point, the judiciary has a role to play, which is to review the treaty, review the extradition statutes. The State Department interprets it first and then sends it to the district court? Correct. I mean- For the U.S. Attorney. The State Department approved it at the very outset. But this particular issue, I'm not sure if that was brought up at that time. What I would say, again, going back to those two cases that I referenced, and I'll quote from Menina, in that case, the district court said that the Romanian officials have detailed the tolling process as it applied to this case, which involved providing documents to explain that tolling process. Similarly, in the Schmeer case, the district court said at the extradition hearing, the district court judge noted the German authorities specifically addressed the statute of limitations issue and explained that under German law, the statute of limitations may be interrupted by certain actions and that such an interruption allows the limitations period to commence anew. Quote, the German authorities specified a variety of acts that may interrupt the running of the statute of limitations. So I guess my- I guess the way I construe your It is well established that an extradition court should normally refrain from second-guessing another country's interpretation of its own statute of limitations. And your point is that I think that the judge — the judge's opinion about the law is not necessarily the country's interpretation of its own statute of limitations and that it was the government's to demonstrate that that — that what the Solakian judge said was, in fact, how the country viewed its statute of limitations. I think that's right, Your Honor. And I know there's a lot of briefing both from the government and from the defense with respect to the Scaffetorius case, the Second Circuit case, which has a language that says the U.S. courts are strongly discouraged from reviewing whether the demanding countries own laws, whether they complied with them. But notably, in that case, the court still says, except to the limited extent necessary to ensure compliance with the applicable extradition treaty. So the district court's role in this instance, when they have to review and understand the requesting country's own laws, is limited. And it is to be assisted by some sort of information, guidance, meaningful analysis that would allow the district court to reach that conclusion. And you're saying it's the U.S. government's burden to produce that evidence. And that's because it's the government who's seeking the extradition on behalf of the requesting country. And one of the things that has to be established is that the offenses charged fall within the applicable extradition treaty. I see that my time is just about up. All right. Thank you, counsel. May it please the Court. Elliott Wong on behalf of the United States. The district court correctly denied Blasco's habeas challenge to the certification of his extradition based on Slovakia's authoritative interpretation of its own statute of limitations and this court's controlling precedent that affords deference to such a foreign court's interpretation of its own criminal procedures. What's the best case that you're going on for your position? There are two, Your Honor. This court first established that proposition in the Saines case in 2009 and then later reaffirmed that this is also similar to the Second Circuit decision in the Skaftoros case. All of these cases establish that an authoritative pronouncement from a foreign nation about its own criminal procedures is entitled to deference and that is the principle that should be applied here. Is the one Slovakian judge's interpretation of the law that by not doing anything, by not affirmatively returning to Slovakia, Mr. Blasco was fighting against his extradition? I mean, it seems to me there's a distinction between passivity and fighting against extradition. The court did below, the district court did examine that issue by looking at the meaning of the word sojourn and that's on pages 8 and 9 of the record and further the magistrate judge in his findings and recommendations and that's on pages 27 through 29 of the record. Both the magistrate judge and the district judge did a careful analysis of the meaning of the word sojourn to confirm that their understanding of the language comported with the Slovakian judge's interpretation. The fact that they were both identical dispelled any concerns that the Slovakian court may have been misinterpreted. No, they're not. If you look at the district court's opinion, the district court says sojourn is to stay somewhere as a temporary resident or to stay in one place while traveling for a short period just to stay and the district court interprets that to mean resisting extradition. Are those necessarily the same things? They're not necessarily the same things, Your Honor, but it does cover the conduct that is at issue here. Specifically, the fact that he was temporarily here in the United States and resisting his return to Slovakia. Well, he was made aware October 2017. What did he do to resist? He exercises legal rights to resist his return through either removal before the immigration court or through extradition in this proceeding. So you're saying he resisted once this proceeding took place or by filing this proceeding is the resistance? Correct, Your Honor. And the resistance, even though it is a legal process and he's entitled to exercise those rights, that is not a factor that... Yeah, isn't he entitled to say, hey, wait a minute, you're not, this isn't an authoritative country interpretation of its own laws. This is one, the trial judge who actually convicted him is saying, oh yeah, bring him back. And I mean, is there, I'm still concerned about whose burden it is to produce, like how does the country view the interpretation of this law? If I may clarify, Your Honor, is it, your question is that how Slovakia is interpreting the district court? Shouldn't we have, no, is this country interpretation of Slovakian law the same as this sole judge? No, Your Honor, but I don't think the distinction makes a difference. And here's why. So the time period in the statute of limitations, it begins on the conviction in Slovakia and it runs, it was set to expire sometime in 2018. The Slovakian judge in her declaration stated that at least as far as the filing and the resisting of extradition, which happened in 2017, would toll the statute of limitations. Then the district court, the magistrate judge below, as well as the extradition court, said that arguably the statute began tolling at some point prior to that when he was informed of the Slovakian conviction in immigration proceedings sometime in either 2012 or 2015 when his immigration attorney confirmed that he had received all copies of the Slovakian court documents. And any one of those instances, Your Honors, is enough to toll the statute of limitations. Going back to the Slovakian judge's interpretation, that was set to toll the statute of limitations. But even further before that, as the district court pointed out below, that could have also tolled the statute of limitations. And the language that Mr. Belasco cites to depart from this court's long-standing precedence in affording deference to foreign courts' interpretation of their own criminal procedures is the Article V in the treaty at issue here. And there's no explicit provision that says that the extradition court in our system would have to conduct an, quote-unquote, independent analysis of criminal procedural issues in Slovakia. And to the contrary, to the extent that Mr. Belasco is arguing for an implicit interpretation of that article in the treaty, the treaty's language does not bear out the weight that Mr. Belasco would have it. Because this would be such a remarkable departure from the ordinary principles of both interpreting international treaties as well as basic principles as extradition law and deference that this court would affirm to Slovakia. Let me ask you this, Counsel. The concept of being convicted in abstentia is one that's If Mr. Belasco is sent back to Slovakia, will he have a chance under Slovakian law to appeal that verdict, a new trial, anything that would give him what we would consider to be better due process? I do not know, Your Honor, and that's not on the record. But it is a consideration that the State Department will consider in making the ultimate determination about whether to extradite him back to Slovakia at that point. So, for example, some totalitarian regimes, for example, China, has, as I understand it, a fairly consistent practice of finding people guilty in abstentia. Do you know whether the State Department will regularly send those folks back? Off the top of my head, Your Honor, I don't believe that we actually have an extradition treaty with China. That answers that question. Yes. And the existence of the extradition treaty, as negotiated between foreign sovereigns, does provide that base level of control over the existence of the foreign criminal procedures. And to the extent that it departs so remarkably, then that would be a diplomatic consideration for the State Department. Basically, what you're asking us to do is say, look, the treaty has certain basics that have to be complied with. Those basics were done here. Maybe the judge didn't say as much as could have been said or has been said in other cases, but it was enough. It was equivalent of one of our memorandum dispositions. You knew what was said. She said there was compliance here. International comedy requires that we defer to that. Is that your position? It is, Your Honor. And this, what the Slovakian judge's declaration in this case, does align quite well with this court's precedent. In the Fayfar case, that was actually a letter about a court decision. It wasn't the court decision itself. And then further in the Second Circuit's decision in the Skavtoros case, that wasn't even a court decision at all. The court there deferred to a foreign nation's interpretation as submitted through a prosecutor's letter. And here we have a declaration from the trial judge. And that is competent evidence in line with these other cases that this court should defer to. And further, the district court below didn't even stop there. Beyond going through the Slovakian judge's interpretation as set forth in the declaration, then considering the meaning of the words, and further then argued as a policy matter that Blasco's interpretation of the statute of limitations should further be rejected because that would mean that he would be able to continue out his extradition proceedings to run out the clock on the statute of limitations and thereby forever prevent his extradition to Slovakia. And that would be, as a policy matter, the district court found untenable. For your purposes, I gather that the fact that Mr. Blasco came here in 2010 before any of this had begun doesn't really matter. It's what he did once he became aware of the proceedings. Is that your position? In other words, he didn't come to the United States for the purpose of fleeing from a prosecution. But eventually he learned of the prosecution. It's your belief that that's what triggers the statute issue, right? Correct, Your Honor. And it can be from when he initially learned about it. It can also be when he then resisted his return to Slovakia through either the removal proceedings or the extradition proceedings. Any of those moments would be enough for this court to defer to the interpretation and for the statute of limitation to have been told. Did we know that he learned about the charges against him before he came to the U.S.? Yes, Your Honor. Let me clarify. Maybe not necessarily the charges, but the Slovakian government did initiate a criminal investigation into Mr. Blasco's conduct four days after the incident itself. Then he did, in fact, participate in the pretrial proceedings by, when he was asked to give a statement, he exercised his rights to remain silent on the matter. So there is some indication in the record that he was at least aware of the ongoing criminal proceedings in Slovakia. It's just the record is not clear about whether or not the exact moment he knew about the charges that were being filed against him. It just seems odd that, you know, the incident occurred in 2007 and here we are in 2023, sending him back. I mean, the statute of limitations does have a policy reason. It just, it's been such a long time that, I mean, it just raises so many questions about why didn't Slovakia act sooner? Is this, you know, an appropriate, you know, is this an appropriate proceeding? Are we interpreting the statute of limitations correctly that, you know, the conviction was in 2010? Yes, Your Honor. And that's over a decade ago? Correct. And so that's actually a consideration that, again, like the abstention issue, that the State Department will consider when it decides to ultimately certify the extradition. And the Court's concern is understandable, and several other courts have expressed similar concerns over extradition proceedings that have taken a number of years. For example, in the Placco case, there was a post-indictment delay of six years. In the Ravaldo case, it was a period of approximately 14 or 15 years. And the Menea case, it was a delay of approximately 20 years. And in each of those cases, even though the Court questioned what may have happened and why the delay may have occurred, in each case, the Court did say that the delay does not invalidate the extradition request, and that would be a consideration for the State Department towards the end of the extradition and making the ultimate decision. Unless the Court has no further questions, I respectfully request that this Court affirm the District Court's denial of Mr. Blasco's habeas petition. Okay, thank you. Mr. Grantham, do you want two minutes for rebuttal? Your Honor, I believe I had requested three minutes, if that's... Oh, right. You can have three minutes. I may not need the entire time. That's okay, that's okay. Just a couple of quick points. One thing I actually also wanted to highlight and note is not only... We have the supplemental declaration from the Slovakian judge, and that's dated, I believe, September 6, 2018. That's while the extradition proceeding was going forward. And the purpose of that declaration was because the charging document had not been and so her declaration basically said, here's the charging document and dealt with the statute of limitations issue. What I would note is there is also an initial declaration from the same judge, dated February 14, 2017. And this is in Volume 2, Excerpts of Record 214. This is an original declaration before Mr. Blasco was even arrested, where she states, The prosecution of Blasco and the enforcement of the four-year sentence of imprisonment are not barred by the applicable statutes of limitation because he sojourned abroad with the intent to avoid the punishment. So she had already determined this without even knowing the underlying facts in 2017 and before Mr. Blasco was ultimately arrested in October 2017. I think that highlights a little bit of what is going on here, which is we don't have a clear understanding of how to do this statute of limitations analysis because she was willing to, in 2017, submit a declaration without... He had not been arrested. So her later argument that he was arrested is that's the thing that told it. Well, we don't even know what the original understanding would have been. You're saying we have contradictory interpretations of Slovakian law by the same judge? Not necessarily contradictory. We have her saying in 2017... Right, but it would be contradictory because she isn't basing it on the same facts. Correct. Because she couldn't have, because she doesn't know when he learned. She would not have been aware of the underlying facts at that time. That was when the Slovakian government was submitting the paperwork to the State Department for his extradition. Sorry. I mean, it just begs the question of who is the burden to come forward with the additional evidence? With respect to the statute of limitations issue? The interpretation of the statute of limitations. It is the government's burden to ensure that the elements and requirements for extradition under the treaty are satisfied. And that means, is Article 5 of the treaty satisfied? Which requires that there not be a statute of limitations issue in the requesting country that would prohibit extradition. So I would submit it's the government's burden to make sure that that is satisfied. Just a quick point. I understood from, I'm not sure it was you or your opposing colleague that indicated that Mr. Blasco received a copy of the charging papers as, I think, as early as 2015. Is that incorrect? There was, as part of the proceedings below, the immigration attorney had submitted a declaration that she had received as part of the immigration process. A notice of that. Okay, so at least for one interpretation, if the Slovakian judge in 2017 was aware of that, I don't know whether she was or not, she could have formed an opinion that he was staying here to avoid prosecution. Is that correct? That could be the possibility. We don't know that from this record at all. We don't have that information. And I suppose I would just lastly say that the fact of that knowledge in 2015 doesn't materially change the fact that the analysis is whether he sojourned abroad with the intent to avoid the punishment. And I don't think there's any evidence of that post-2015. But again, it ultimately comes down to what is the meaning of the phrase sojourn with the intent to avoid the punishment? How are these provisions applied under Slovakian law? And I don't think we have enough information for that. We would ask that the court remand with instructions to grant the petition. All right. Thank you, counsel. Blasco v. Boyden will be submitted.
judges: Siler, WARDLAW, SMITH